**Lee WILLIAMS, Appellant,**

v.

**Larry FAGNANI, Appellee.**

No. S–12192.

Supreme Court of Alaska.

Nov. 23, 2007.

Rehearing Denied Feb. 8, 2008.

Hal P. Gazaway, Anchorage, for Appellant.

Randall Simpson and Cheryl Mandala, Jermain, Dunnagan & Owens, P.C., Anchorage, for Appellee.

Before: MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Lee Williams and Larry Fagnani own adjacent parcels of land, which were originally owned by Charles Harrison, a homesteader. To obtain access to a nearby public road, Harrison and other homesteading families constructed a small private road from what is now Williams's property through part of a parcel now owned by Fagnani. Although this road begins on a public section line easement, a significant portion of it is on Fagnani's land. No written easements grant Williams the right to use the portion of the road on Fagnani's land. After Fagnani claimed that the portion of the road on his land belonged to him, Williams sued for access, claiming an easement under various

legal theories. The superior court concluded after trial that Williams has no easement. Williams appeals. We conclude that because the road was the only route to the Williams parcel when it was originally severed from Harrison's estate, Williams is entitled to an implied easement. We therefore reverse.

## II. FACTS AND PROCEEDINGS

Lee Williams and Larry Fagnani each own parcels of land that were once part of a Wasilla-area homestead settled by Charles Harrison in 1959 and patented in 1964.[1] Williams owns what is now known as tax parcel C3 and Fagnani owns tax parcels C5, C6, C7, and C8.[2] In 1960, to obtain practical access to their homesteads, Harrison and several other homesteading families hired William Elkins to improve and widen an existing wagon trail to make it drivable; as thus improved, this road connected their properties to a trail that became Hollywood Road. Part of the disputed road was built on a public section line easement, but as Elkins later testified at trial, part was built on Harrison's land because a steep ridge along the section line prevented the entire road from following the section line easement exactly. Elkins also testified that Harrison and the other families knew that part of the road was on Harrison's land. Following trial, the superior court found that "[t]he road was built on Harrison's property with his permission and with the clear intent that all of the original homesteaders would use the road. At the time the road was built, all involved in its construction recognized the road as the only practical way to access the homesteads."

In March 1964 Harrison sold parcel C3 to the Blisses. In 1997 the Blisses sold C3 to the Brookses, and in 2000, the Brookses sold it to Williams. Harrison sold the rest of his land (parcels C5, C6, C7, and C8) to the VanRyswyks in 1970. Fagnani acquired C6

in 1978, C5 and C7 in 1992, and C8 in 1998. Parcel C3 (the Williams parcel) is located north of C5, C6, C7, and C8 (Fagnani's land). The disputed road runs due south from the southwest corner of C3 along the section line easement on the western border of C5, and to the east of the section line easement near the southern extent of C5 and for almost the entire length of C8 until it connects to Hollywood Road.

Appendix A depicts the lots, the public section line easement, and the disputed road. Lots 6, 7, and 8 are tax parcels C6, C7, and C8. The curved, dotted line across parcel C8 represents the disputed road.

In 2002 Fagnani asserted that he owned the portion of the disputed road that was located on his property. Fagnani offered to give Williams and other neighbors temporary access to the road if they would sign a written easement agreement. Two months after Fagnani offered him a written easement, Williams sued for access to the road.

Following a four-day trial in September 2005, the superior court determined that Williams was not entitled to an easement across Fagnani's land. The superior court found that when the disputed road was built in 1960, "all involved in its construction recognized the road as the only practical way to access the homesteads," but concluded that Williams was not entitled to an implied easement because his parcel "is *not*" landlocked. (Emphasis in original.) The superior court also concluded that Williams was not entitled to a prescriptive easement, an oral easement by estoppel, an easement by necessity, or an easement based on public dedication under RS 2477. Williams moved unsuccessfully for a new trial.

Williams appeals.

---

1. Harrison's homestead is described in the findings of fact as follows:
   Seward Meridian, Township 17 North, Range 2 West, of the Southeast 1/4 Southeast 1/4 (SE 1/4 SE 1/4) of Section 20 and the North 1/2 Southwest 1/[4] Southwest 1/4 Northwest 1/4 (N 1/2 SW 1/4, SW 1/4 NW 1/4) of Section 21.

2. Williams's parcel, C3, is described in a deed to the prior owners as follows:

   The Southwest one-quarter (SW 1/4) of the Northwest one-quarter (NW 1/4) of Section Twenty-one (21), Township Seventeen (17) North, Range Two (2) West, Seward Meridian, Alaska.
   Fagnani's property is described in the findings of fact as including tax parcels C5–C8 "of Section 21, Township 17N, Range 2W."

## III. DISCUSSION

### A. Standard of Review

■ The dispositive question here—whether Williams has an implied easement for the part of the disputed road on Fagnani's property—presents a question of law. "We review questions of law de novo and adopt the rule of law most persuasive in light of precedent, reason, and policy."[3]

### B. Williams Is Entitled to an Implied Easement To Use the Disputed Road Across Fagnani's Property.

Williams advances various theories to support his claim that he is entitled to an easement across Fagnani's land. He argues, among other things, that because the disputed road provided the only access to his property when Harrison sold the parcel to the Blisses in 1964, he is entitled to an implied easement. Fagnani seems to argue in response that the easement was never "reasonably necessary" to the enjoyment of Williams's property. Fagnani also argues that "the easement ceased to exist when other means of accessing the property arose," and cites *Methonen v. Stone* as support for this proposition.[4]

■ This case is resolved by our analysis of Williams's claim of implied easement. An implied easement arises when there is "(1) a quasi-easement at the time of contract of sale or conveyance, (2) which is apparent, (3) reasonably necessary for the enjoyment of the land retained or the land conveyed, and (4) continuous in nature."[5] Addressing the first and third elements, Fagnani asserts that "there was no quasi-easement at the time of the sale to Bliss," and that even if there was an easement at one time, it was extinguished by the time Williams purchased the land "because it was no longer 'reasonably necessary.'" Fagnani does not dispute the exis-

tence of the second and fourth elements of an implied easement, so we will address only the first and third elements.

■ As to the first element, a quasi-easement arises if a person "make[s] use of one part of his land for the benefit of another part."[6] Williams argues that Harrison created a quasi-easement because Harrison could only access the land that later became the Williams parcel by using the disputed road. Williams also argues that a quasi-easement arose because Elkins used the road to clear what is now the Williams parcel for Harrison to qualify for his homestead. Fagnani responds that no quasi-easement existed when Harrison sold the parcel to the Blisses. To support that assertion, Fagnani argues that Patrick Bliss asked one of Harrison's successors in interest in parcel C8 for permission to use the disputed road.

The superior court resolved the quasi-easement dispute by concluding that "[t]here was no evidence presented of any . . . quasi-easement granted by Harrison to Bliss."

We disagree with that legal conclusion. We do so based on our review of the superior court's factual findings. The superior court made two critical findings: that when it was built, the disputed road was "the only practical way to access the homesteads," and that the Blisses used the disputed road as "their route of travel to the road and highway system." The court made no finding that, as of 1964, there was any other practical means of accessing the parcel (C3) that was sold to the Blisses in that year. The court's only other potentially relevant findings regarding access do not imply that between 1960, when the disputed road was built, and 1964, when the parcel was sold to Williams's predecessor, there was any additional way to gain

---

**3.** *Enders v. Parker*, 125 P.3d 1027, 1029 (Alaska 2005) (citation omitted).

**4.** *Methonen v. Stone*, 941 P.2d 1248, 1253 (Alaska 1997) (stating that implied easement runs with the land "so long as it . . . remains reasonably necessary" where landowner claimed easement for water well) (citations omitted).

**5.** *Demoski v. New*, 737 P.2d 780, 783–84 (Alaska 1987) (holding that superior court did not err by concluding that implied easement existed where road was reasonably necessary to enjoyment of homestead) (citations omitted).

**6.** *Freightways Terminal Co. v. Indus. & Commercial Constr., Inc.*, 381 P.2d 977, 983 (Alaska 1963).

practical access to the homesteads.[7]

Based on the superior court's factual findings, we conclude that a quasi-easement existed as a matter of law when Harrison sold the parcel to the Blisses in 1964 at a time when the disputed road provided the only practical access to the Blisses' parcel. This case is controlled by *Freightways Terminal Co. v. Industrial & Commercial Construction, Inc.*, in which we held that the landowner, by building a road over one part of his land so that another part of his land was connected to the road system, had created a quasi-easement.[8]

That Bliss may have sought permission to use the disputed road, as Fagnani contends, is irrelevant. Assuming that Bliss did ask for permission to use the disputed road and assuming that doing so reflected his subjective belief he had no right of passage, that subjective belief would not defeat his legal right to an implied easement.

■ As to the third element of the implied easement test, the easement must be "reasonably necessary for the enjoyment of the land ... conveyed." [9] Williams argues that the easement was reasonably necessary when Harrison sold the land to the Blisses because the disputed road "provided the only route of travel" to what became the Williams parcel. Fagnani responds that, according to our holding in *Methonen*, an implied easement only continues as long as it is "reasonably necessary." [10] In his reply brief, Williams argues that *Norken Corp. v. McGahan* should control.[11] In *Norken*, we held that "[h]aving once arisen, the implied easement

is not extinguished merely because the reasonable necessity ceases to exist." [12]

We agree with Williams that *Norken* controls here. Although *Methonen* is more recent than *Norken*, it is not on point. It addressed an easement for access to a well, not an easement needed for access to a landlocked parcel.[13] *Norken* concerned a road that provided access to a parcel that might have been landlocked when the parcel was originally sold.[14] In *Norken*, a landowner named McGahan had used the disputed road to access working gravel pits on his homestead.[15] Based on the record in *Norken*, we concluded that the parcel McGahan retained might have been landlocked when he sold the rest of his land.[16] Because the superior court, reasoning that the property was not landlocked at the time of *trial*, had denied McGahan an implied easement, we remanded so the superior court could determine whether the parcel had been landlocked at the time of *severance*.[17] We held: "[T]he existence of reasonable necessity is determined as of the time of severance, because it is at that time that the implied easement either does or does not arise. Having once arisen, the implied easement is not extinguished merely because the reasonable necessity ceases to exist." [18]

Here, the superior court found that the disputed road was the practical means of access to the homesteads, including what became parcel C3, in 1960 and did not find any change in access as of 1964, at the time of severance.[19] We therefore conclude that the

7. *See infra* note 19.

8. *Freightways Terminal Co. v. Indus. & Commercial Constr., Inc.*, 381 P.2d 977, 983, 985 (Alaska 1963).

9. *Demoski*, 737 P.2d at 784.

10. *Methonen*, 941 P.2d at 1253.

11. *Norken Corp. v. McGahan*, 823 P.2d 622 (Alaska 1991).

12. *Id.* at 631.

13. *Methonen*, 941 P.2d at 1249.

14. *Norken*, 823 P.2d at 630–31.

15. *Id.* at 624–25, 630–31.

16. *Id.* at 631.

17. *Id.*

18. *Id.*

19. Although the superior court did not expressly find that the disputed road was the "only" practical means of access to the parcel at the time of severance in 1964, this conclusion is implicit because the court found that the disputed road was the Blisses' "route of travel to [Hollywood] road and [the] highway system." The court's findings describe the other routes to access the Williams parcel, including the "Elkins Road," in the present tense—there is no finding that these

easement was "reasonably necessary" to the enjoyment of the land.

Because the first and third elements have been established, and the second and fourth elements are not contested, we hold that it was error to conclude that Williams did not have an implied easement permitting him to use the portion of the disputed road on Fagnani's property. Having held that Williams is entitled to an implied easement based on undisputed facts, we need not consider whether he would be entitled to an easement under any of the other legal theories he advances.

Although the issue was not briefed, Williams's attorney conceded at oral argument on appeal that the easement was limited to thirty feet. Williams's attorney also stated at argument: "He's not entitled to a

bigger easement. He's not entitled to an easement that allows him more intensive use than he now has." Having concluded that Williams was not entitled to an easement, the superior court did not consider what scope any easement should have. We will therefore not address the scope of the implied easement here.[20]

## IV. CONCLUSION

Because we conclude that Williams is entitled to an implied easement over the disputed road, we REVERSE and REMAND for entry of judgment in Williams's favor.

FABE, Chief Justice, not participating.

## APPENDIX A

other routes existed at the time of severance in 1964. Two of these routes are easements, not roads, the third was built well after 1964 (in 2000 or 2001), and the fourth was Elkins Road, a road to the east of the disputed road. Fagnani never argued at trial or on appeal that Elkins Road existed in 1964 or that it gave practical access to the Williams parcel in 1964, and Williams argued at trial and on appeal that the Elkins road did not provide access to his land.

20. We previously addressed the issue of the scope of implied easements:

Easements appurtenant are readily apportionable upon a subdivision of the original dominant tenement. This means that each part of the dominant tenement is entitled to claim the

benefit of the easement for the service of his special segment. Some increase in burden can result from the increase in the number of users, but such increase in burden is kept within limits by the fact that any easement appurtenant has its total extent defined by the needs of the dominant estate.

*Laughlin v. Everhart*, 678 P.2d 926, 932 (Alaska 1984) (adopting 3 RICHARD POWELL & PATRICK J. ROHAN, THE LAW OF REAL PROPERTY § 418, at 34–218 (rev. ed.1979)). *See also* RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.10 (2000); R.W. Gascoyne, Annotation, *Right of Owners of Parcels Into Which Dominant Tenement Is or Will Be Divided to Use Right of Way*, 10 A.L.R.3d 960 (1966).