HP LIMITED PARTNERSHIP, Appellant
and Cross–Appellee,

v.

KENAI RIVER AIRPARK, LLC, and Ke-
nai River Airpark Owners Association,
Inc., Appellees and Cross–Appellants.

Nos. S–13955, 13965.

Supreme Court of Alaska.

Jan. 13, 2012.

Paul D. Kelly, Kelly & Patterson, Anchorage, for Appellant and Cross–Appellee.

William L. Choquette, Choquette & Farleigh, LLC, Anchorage, for Appellees and Cross–Appellants.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

In 1975, two business partners bought a 160–acre property bordering the Kenai River; they subdivided it into 114 lots and named it Holiday Park Subdivision. The partners reserved an easement across Lot 30 for the benefit of all Holiday Park owners, but disagreements arose over the permissible uses and geographic boundaries of the easement.

In 2004, the owner of Lot 30 sold it to Kenai River Airpark, LLC. Kenai River Airpark transferred ownership to Kenai River Airpark Owners Association, Inc., which allowed its members to use Lot 30 for general recreation. One of the developers of Holiday Park sued Kenai River Airpark and the Airpark Owners Association to prevent their use of Lot 30. The superior court ruled that members of the Airpark Owners Association could use Lot 30 as long as they did not interfere with Holiday Park owners' use of the easement. The superior court also ruled that the easement's scope was limited to a defined path shown on the Holiday Park plat, but that permissible uses of the easement included boat launching, bank fishing, and river access. The Holiday Park developer appeals.

Because Holiday Park's plat unambiguously describes the easement's scope as "30' BOAT LAUNCH ESM'T," we reverse the

superior court's ruling permitting more expansive use. However, we affirm the superior court's order regarding the geographic bounds of the easement; the original developer did not establish an expanded easement by prescription, implication, inquiry notice, or estoppel. We also affirm the superior court's determination that members of the Airpark Owners Association may use Lot 30 for recreational purposes. Finally, we affirm the superior court's prevailing party determination and attorney's fee award.

## II. FACTS AND PROCEEDINGS

### A. Facts

John Todd and Neal Hausam bought 160 acres of undeveloped land near Soldotna in 1975. The land is bordered by the Kenai River to the east and Roberts Subdivision to the north. Todd and Hausam each took an undivided one-half interest in the property and subdivided it into Holiday Park Subdivision ("Holiday Park"). Holiday Park has 114 lots.

Hausam was responsible for drafting the plat and corresponding plat notes for Holiday Park. Lot 30—a river-front lot—was drawn nearly twice the size of the other lots to accommodate an easement for the benefit of all property owners in Holiday Park. The easement was depicted on the plat as a defined path labeled "30' BOAT LAUNCH ESM'T." The plat notes state that "[a]ll roads, airstrip and boat launching area [are] for the use of all property owners in the subdivision." The plat was recorded on August 21, 1975. Todd and Hausam also drafted covenants for Holiday Park, one of which provided: "No lot shall be used except for residential or recreational purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than one single family dwelling and accessory non-trade or business buildings."

Todd and Hausam started selling lots in 1976; 12 lots sold between 1976 and 1978, but the partnership was dissolved in 1978 after a disagreement. Todd and Hausam split the remaining lots between them. Todd conveyed his interest in Lot 30 to Hausam by statutory warranty deed "[subject to] the

reservations, restrictions, easements and encumbrances of record." Todd and Hausam continued to sell lots in Holiday Park, and use of the easement across Lot 30 increased. Some lot owners began parking, camping, and fishing on and around the defined easement.

In the late 1970s and early 1980s, some Holiday Park lot owners noticed that members of the general public were using the easement to access the river. The owners decided to construct a gate at the top of the easement to prevent unauthorized use; Hausam allowed them to build the gate.

In 1994, Todd conveyed all of his unsold lots to Holiday Park Limited Partnership ("HP Limited"). Todd is the sole owner of HP Limited.

Hausam sent a letter to Holiday Park lot owners on July 2, 2001, informing them that the easement across Lot 30 "was intended and shown on the recorded plat for boat launching for property owners." He explained that "to facilitate the sale of [Lot 30], . . . [he would] enforce the intent and recorded covenant on the recorded plat to allow property owners *only* boat launching *only* across the easement." Hausam suggested that the lot owners form a homeowners' association and purchase Lot 30 from him to guarantee their continued use of the easement and surrounding areas for fishing, camping, and general recreation. The Holiday Park lot owners chose not to do so. In an attempt to prevent activities other than boat launching, Hausam constructed a fence along the easement. The fence was made of two steel cables stretched between metal posts. It prevented vehicle access to part of the lot but did not completely enclose the easement area.

Hausam sold Lot 30 to Voltec International, Inc. in October 2003. Randy Comer, a representative of Voltec, approached John Hoback and Fred Schroeder about buying property in both Holiday Park and Roberts Subdivision. Hoback and Schroeder then formed Kenai River Airpark, LLC ("Kenai River Airpark") and, in May 2004, Kenai River Airpark bought lots in Roberts Subdivision, and three lots—including Lot 30—in Holiday Park. After incorporating this property into a planned recreational/residential community, Hoback and Schroeder formed Kenai River Airpark Owners Association, Inc. ("Airpark Owners Association"). The Airpark Owners Association is composed of the owners of 16 lots and one tract in Roberts Subdivision, and the owners of three lots in Holiday Park. A maximum of 35 lots in the two subdivisions may be owned by members of the Airpark Owners Association under its Declaration of Covenants, Conditions, and Restrictions. Roberts Subdivision's covenants allow duplex homes, but only single-family dwellings are allowed in Holiday Park. Kenai River Airpark transferred ownership of Lot 30 to the Airpark Owners Association on October 11, 2005. The Airpark Owners Association planned to use Lot 30 as a common area "for the benefit of all lot owners in the community."

## B. Proceedings

HP Limited sued Kenai River Airpark and the Airpark Owners Association in June 2007. HP Limited asserted that: (1) the Airpark Owners Association's ownership and use of Lot 30 violated Holiday Park's single-family restriction; (2) Kenai River Airpark's use of Lot 30 to market Roberts Subdivision lots violated the commercial use restriction in Holiday Park's covenants; and (3) Holiday Park lot owners, including HP Limited, had established an easement by prescription and/or estoppel to use Lot 30 for general recreation, including fishing, parking, picnicking, and camping. The Kenai River Airpark and its Owners Association filed a counterclaim alleging that: (1) Holiday Park lot owners could only use the easement for boat launching; and (2) Holiday Park lot owners were required to help maintain and insure the boat launch.

The parties filed cross-motions for summary judgment. After oral argument, the superior court ruled that the easement was unambiguously confined to boat launching within the 30–foot wide path depicted on the Holiday Park plat. The superior court found that extrinsic evidence of Todd's and Hausam's intent supported this limited scope. The superior court also observed that HP Limited may have had a claim for an expand-

ed easement by prescription or implication, but ruled that these claims required the resolution of questions of fact at trial. The court confined its easement by prescription inquiry to those lots owned by HP Limited itself, ruling that HP Limited could not assert prescriptive rights for other Holiday Park lot owners because HP Limited was "not asserting a general right of the public to utilize Lot 30." Finally, the superior court ruled that members of the Airpark Owners Association, as the owners of Lot 30, could use the lot so long as their use did not unreasonably interfere with Holiday Park lot owners' enjoyment of the easement. The superior court ruled that the Airpark Owners Association's proposed recreational use of Lot 30 did not conflict with Holiday Park's covenants and rejected the argument that the Airpark Owners Association's use would interfere with Holiday Park lot owners' use of the easement.

A bench trial on the remaining claims was held on May 26 and 27, 2009. Todd and Hoback both testified. The superior court ruled that HP Limited had not established an easement by prescription because its alleged use did not satisfy the requirements of notoriety and hostility. The superior court also ruled that HP Limited had not established an easement by estoppel because there was no evidence of an oral grant of an expanded easement.

The superior court discussed two additional grounds for expanding the easement: intent and implication. Although the superior court had ruled at the summary judgment stage that Holiday Park's plat unambiguously limited the scope of the easement to boat launching, the evidence admitted at trial included the depositions of 14 Holiday Park lot owners, each of whom believed that the easement allowed for general access to the Kenai River. All 14 lot owners testified that they were told that the right to bank fish came with the purchase of their lots. The superior court found that Hausam and Todd intended the easement across Lot 30 to be used for boat launching, all forms of access to the Kenai River, and bank fishing; it ruled that these uses of the easement had been established "by intent and by implication." But

the superior court maintained its earlier decision that the geographic extent of the easement was strictly limited to the 30–foot wide path depicted on the plat, and ruled that the easement could not be used for parking or general recreation.

On HP Limited's claim that Holiday Park's "single family dwelling" covenant prohibited the Airpark Owners Association from allowing its members to use Lot 30, the superior court ruled:

> The restriction simply states that no lot shall be used except for residential or recreational purposes. [The Association's] use of Lot 30 for recreational purposes is similar to Holiday Park lot owners' use of the lot over the years to picnic, camp, and recreate.... It would be disingenuous to now claim [the Association] cannot use the lot for the same activities.

Kenai River Airpark subsequently filed a motion to alter or amend the judgment, arguing the superior court erred: (1) by finding that the intended use of the Lot 30 easement included activities other than boat launching; and (2) by concluding HP Limited had perfected an easement by implication. The superior court rejected Kenai River Airpark's argument that permissible uses of the easement should have been limited to boat launching, explaining:

> [I]n its original order for summary judgment [the court] found ... that the language was ambiguous as it applied to creating a general recreational use easement. However, that was before the court had listened to the full deposition testimony of 14 witnesses, including Neal Hausam and John Todd. Each and every Holiday Park lot owner who testified stated that they understood that the easement on Lot 30 provided them with full access to the Kenai River as well as bank fishing, and that these representations were made by Neal Hausam as well as John Todd. When looking at the provision in the plat notes that "all roads, airstrip and boat launch area are for the use of all property owners" in the context of providing river access rather than an all-inclusive recreational easement, the court found the term 'boat launch area' was ambiguous in its meaning.

But the superior court reversed its ruling that HP Limited had established an easement by implication. Because the superior court found that no one had used the boat launch at the time of severance in 1978, and because no lots had been sold when Todd transferred his ownership interest to Hausam, the superior court vacated its ruling that Todd and Hausam had created an easement by implication.

In ruling on Kenai River Airpark's motion to alter or amend judgment, the superior court also limited its earlier ruling that the Airpark Owners Association's use of Lot 30 did not violate Holiday Park's "single family dwelling" covenant. The superior court observed that the Airpark Owners Association's members owned 16 lots in Roberts Subdivision and three lots in Holiday Park, and cautioned that its ruling was "not to suggest [Kenai River Airpark] can ... have a corporation purchase a lot in the Roberts Subdivision and turn Lot 30 into a community use lot, or even have another subdivision buy a lot in the Roberts Subdivision and be able to broaden the usage of Lot 30." The superior court noted that HP Limited could seek additional recourse if there was a "substantial enhancement" in the use of Lot 30.

Finally, the superior court's order observed that the defendants had successfully defended all of the plaintiff's claims and "significantly prevailed" on most of their counterclaims: the members of the Airpark Owners Association were allowed to use Lot 30 and the use of the easement by Holiday Park lot owners was restricted, although not to the extent Kenai River Airpark had requested. The court declared Kenai River Airpark and the Airpark Owners Association the prevailing parties and awarded them 30% of their attorney's fees.

HP Limited appeals the superior court's rulings that: (1) the scope of the easement across Lot 30 is limited to the defined path depicted on the Holiday Park plat and does not include parking, camping, or other non-fishing recreational activities; (2) the scope of the easement has not been expanded by prescription, implication, or estoppel; (3) the Airpark Owners Association may allow its members to use Lot 30; and (4) Kenai River Airpark and the Airpark Owners Association are the prevailing parties. Kenai River Airpark and the Airpark Owners Association cross-appeal the superior court's decision that the easement's scope includes fishing and access to the Kenai River.

### III. STANDARD OF REVIEW

We review whether a deed or plat is ambiguous de novo, as a question of law.[1] We make this determination by looking within the four corners of the document; if the document is only open to one reasonable interpretation, we do not consider extrinsic evidence of ambiguity.[2] If the document is ambiguous, we resort to extrinsic evidence; "conclusions about the parties' intent drawn by the trial court after sifting and weighing such extrinsic evidence" are reviewed for clear error.[3]

A superior court's determination of whether an easement by prescription, implication, inquiry notice, or estoppel exists is based on findings of fact and legal conclusions.[4] We do not disturb a trial court's findings of fact unless they are clearly erroneous.[5] We review the application of law to facts de novo.[6]

"The interpretation of a covenant is a question of law to which we apply our independent judgment."[7]

1. *Estate of Smith v. Spinelli*, 216 P.3d 524, 528 (Alaska 2009).

2. *Id.* at 529.

3. *Id.*

4. *Williams v. Fagnani*, 175 P.3d 38, 40 (Alaska 2007); *Price v. Eastham*, 75 P.3d 1051, 1055 (Alaska 2003).

5. *Hurst v. Victoria Park Subdivision Addition No. 1 Homeowners' Ass'n*, 59 P.3d 275, 277 (Alaska 2002).

6. *Price*, 75 P.3d at 1055.

7. *Hurst*, 59 P.3d at 277.

■ We review a trial court's prevailing party determination for abuse of discretion, which we find only if the determination is "arbitrary, capricious, manifestly unreasonable, or improperly motivated."[8]

## IV. DISCUSSION

### A. The Plat Unambiguously Limits The Easement To Boat Launching Within The Bounds Of The Defined Path.

The parties dispute the appropriate geographic bounds and permitted uses for the easement across Lot 30. The easement is shown on Holiday Park's plat as a defined path across Lot 30 labeled "30′ BOAT LAUNCH ESM'T." One of the plat notes reads: "All roads, airstrip and boat launching area [are] for the use of all property owners in the subdivision." The superior court initially ruled that the geographic scope of this easement was limited to the defined path and that the only permissible use of the easement was boat launching. But after trial, the superior court was swayed by the deposition testimony of many Holiday Park lot owners who used the easement for a variety of purposes. In light of their testimony, the superior court concluded that the grantors intended the easement could be used for purposes besides boat launching. The court decided that the intended uses of the easement included boat launching, bank fishing, and access to the river; but it maintained its ruling that the easement's geographic scope was confined to the path depicted on the plat. HP Limited argues on appeal that the geographic scope of the easement includes the shoreline area south of the defined path and areas alongside

the path. It also claims that the easement was intended to permit all general recreational uses, including camping, picnicking, and parking. Kenai River Airpark responds that the plat unambiguously limits the easement's scope to boat launching activities within the defined path.

■ Whether a deed is ambiguous is a question of law.[9] "The touchstone of deed interpretation is the intent of the parties and where possible the intentions of the parties will be given effect."[10] We have announced a three-step approach to deed interpretation, and an easement depicted on the face of a plat is interpreted using this same approach.[11] First, the court must look at the four corners of the document "to see if it unambiguously presents the parties' intent."[12] "If a deed when 'taken as a whole' is open to only one reasonable interpretation, the interpreting court 'need go no further.'"[13] But if the document is ambiguous, the court considers extrinsic evidence of the surrounding facts and circumstances.[14] "[T]his inquiry can be broad, looking at 'all of the facts and circumstances of the transaction in which the deed was executed, in connection with the conduct of the parties after its execution.'"[15]

■ We review the superior court's findings concerning the parties' intent after examining extrinsic evidence for clear error.[16] If no intent can be ascertained after examining both the document itself and the extrinsic evidence, then the court should resort to rules of construction.[17] As we explained in *Estate of Smith v. Spinelli*:

In the context of contract interpretation, we have departed from the "cumbersome" traditional parol evidence rule by allowing

---

8. *Taylor v. Moutrie–Pelham*, 246 P.3d 927, 928–29 (Alaska 2011).

9. *Cowan v. Yeisley*, 255 P.3d 966, 971 (Alaska 2011).

10. *Estate of Smith v. Spinelli*, 216 P.3d 524, 529 (Alaska 2009).

11. *See id.* (interpreting a plat); *see also Kennedy v. Bodi*, Mem. Op. & J. No. 564, 1991 WL 11657237, at *1–2 (Alaska July 17, 1991) (refusing to examine extrinsic evidence because plat was unambiguous regarding scope of easement).

12. *Spinelli*, 216 P.3d at 529.

13. *Id.* (quoting *Norken Corp. v. McGahan*, 823 P.2d 622, 626 (Alaska 1991)).

14. *Id.* (quoting *Norken Corp.*, 823 P.2d at 626).

15. *Id.*

16. *Id.*

17. *Id.*

the use of extrinsic evidence without the need for a preliminary finding that a contract is facially ambiguous. Thus, extrinsic evidence may be consulted in determining whether a contract is ambiguous as well as in resolving any ambiguity. But, as we have recognized, our three-step approach to deed interpretation differs from our more flexible approach to contract interpretation and *does not allow the use of extrinsic evidence in making the threshold determination whether a deed is ambiguous.*[18]

Despite this Alaska case law, HP Limited urges us to adopt the Colorado Supreme Court's approach to deed interpretation. In *Lazy Dog Ranch v. Telluray Ranch Corp.*,[19] the Colorado Supreme Court relied on the Restatement (Third) of Property § 4.1, which allows courts to interpret an expressly created servitude "in light of all the circumstances."[20] HP Limited argues the deposition testimony of Holiday Park lot owners shows that "a clear interpretation of [the plat's] language is discerned from the use put to Lot 30 from its inception." HP Limited argues that the superior court correctly interpreted the easement "to fit the circumstances in accord with the original intent" as shown by extrinsic evidence. We disagree.

■■■ Alaska's three-step approach to deed interpretation does not allow the consideration of extrinsic evidence or the circumstances of the parties when evaluating whether a plat or deed is ambiguous. We use this approach because potential land purchasers must be able to rely on the plain and clear language of deeds or plats without being concerned that an otherwise plain meaning might be modified by the circumstances surrounding the drafting of the instrument. In this case, this rule of law requires that we first look within the four corners of the plat to determine whether it is ambiguous.

■■■ The superior court found no ambiguity in the description of the easement at the summary judgment stage, but it reversed this ruling after considering the deposition testimony of Holiday Park lot owners presented at trial. The consideration of this extrinsic evidence was contrary to our rule that "[i]f a deed when 'taken as a whole' is open to only one reasonable interpretation, the interpreting court 'need go no further.'"[21]

The Holiday Park plat clearly defines the geographic boundaries of the easement across Lot 30 and the purpose for which it may be used. The plat notes do not add ambiguity to the document; they confirm that the easement is a "boat launching area ... for the use of all property owners in the subdivision." Because we do not consider extrinsic evidence when making the threshold ambiguity determination,[22] our inquiry is complete. The easement's scope is limited to boat launching within the boundaries depicted on the plat.

HP Limited also argues that easements reserved across the riverfront portions of the lots adjacent to Lot 30 demonstrate that the Lot 30 easement was intended to serve not only as an access route to the river, but also as a walkway easement along the frontage of the river. But HP Limited's counsel conceded during oral argument that the waterfront easements on the lots adjacent to Lot 30 do not appear within the four corners of the Holiday Park plat; in fact, those easements were first reflected in the deeds for the adjacent lots which were recorded a year after the plat was recorded. Because the easements on the adjacent lots are not shown on the plat, they are extrinsic evidence that may not be considered in determining whether an ambiguity exists. We conclude that

18. *Id.* at 530 (emphasis added) (internal citations omitted).

19. 965 P.2d 1229 (Colo.1998).

20. *Id.* at 1235–36. HP Limited claims that we already adopted this approach in *Spinelli,* but this assertion is incorrect. *Spinelli* is clear that the first step in our approach to interpreting deeds or plats is to look solely to the four corners

of the document, without consideration of extrinsic evidence. 216 P.3d at 529. In *Lazy Dog,* the Colorado Supreme Court explicitly *rejected* the approach we followed in *Spinelli.* See 965 P.2d at 1236.

21. *Spinelli,* 216 P.3d at 529.

22. *Id.*

the plat unambiguously limits the scope of the easement across Lot 30 to boat launching within the 30-foot path depicted on the plat.

### B. The Airpark Owners Association Can Own Lot 30, And Its Members May Use Lot 30 For Recreation.

#### 1. Neither the Airpark Owners Association's ownership, nor its members' use, of Lot 30 violates Holiday Park's covenants and restrictions.

 Holiday Park's covenants contain a "Land Use and Building Type" restriction, which states that "[n]o lot shall be used except for residential or recreational purposes. No building shall be erected, altered, placed or permitted to remain on any lot *other than one single family dwelling* and accessory non-trade or business buildings." (emphasis added) HP Limited argues that this single-family dwelling restriction also applies to Holiday Park's "residential or recreational purposes" restriction. In other words, HP Limited argues that the Airpark Owners Association, which has a multi-family membership, should not be allowed to use Lot 30, even if only for recreation. HP Limited also contends Holiday Park's covenants prevent the Airpark Owners Association from owning Lot 30 in the first place. The Airpark Owners Association responds that the single-family building restriction and the "recreational" use restriction must be read separately.

The superior court ruled that Holiday Park's covenant "simply states that no lot shall be used except for residential or recreational purposes," and it determined that the Airpark Owners Association's ownership of Lot 30 did not violate the Holiday Park covenant. The superior court explained that the Airpark Owners Association's use of Lot 30 was for recreational purposes, that Holiday Park lot owners erroneously thought Lot 30 had been dedicated for their personal recreational use, and that it "would be disingenuous to now claim [the Airpark Owners Association] cannot use the lot for the same activities." In ruling on the motion to alter

or amend the judgment, the superior court further clarified that its ruling was:

specific to the facts as presented at trial. That is that [the Airpark Owners Association] consists of [the owners of] 16 lots from the Roberts Subdivision and three lots from the Holiday Park Subdivision, and that these lots contain covenants and restrictions similar to the covenants and restrictions in the Holiday Park covenants, which has 114 individual lots.

 We have previously described guiding principles for the interpretation of covenants and restrictions:

Where the language of the covenant is not ambiguous, the plain meaning governs. Where the language of the covenant is ambiguous, judicial construction is necessary. Covenants are construed within their own four corners. They are also construed to effectuate the intent of the parties. Once the intentions of the parties to the covenant are known, their intention serves to limit the scope and effect of the restriction. Because restrictions are in derogation of the common law, they should not be extended by implication, and doubts should be resolved in favor of the free use of land.[23]

Applying these principles to the instant case, we hold that the Airpark Owners Association may properly own lots in Holiday Park; nothing in Holiday Park's covenants restricts ownership in Holiday Park to individuals, and there is no latent ambiguity suggesting such a restriction. Holiday Park's "Land Use and Building Type" covenant does not confine ownership to individuals or natural persons, and the covenant provides no reason for us to imply such a restriction. The covenant states: "No building shall be erected, altered, placed or permitted to remain on any lot other than one single family dwelling and accessory non-trade or business buildings." While there is some ambiguity regarding whether the term "single family" is a land use—rather than merely a building—restriction, it is clear that the covenant does not regulate owner-

---

**23.** *Hurst v. Victoria Park Subdivision Addition No. 1 Homeowners' Ass'n,* 59 P.3d 275, 278 (Alaska 2002) (internal citations omitted).

ship in Holiday Park in any way. The plain meaning of the covenant controls; the Airpark Owners Association is not prohibited from owning Lot 30.

■ We also reject HP Limited's argument that the covenant's building restriction operates as a limitation on the Airpark Owners Association's use of Lot 30. The building restriction appears in the second sentence of the covenant, immediately after the sentence discussing "residential or recreational purposes." The covenant is unambiguous as it relates to ownership, but there are two possible interpretations of the covenant's "recreational use" clause: (1) "single family" could relate to "recreational use," so that the restriction means "single family recreational use," or (2) "single family dwelling" could refer only to the type of structure that may be built and not to the use of the land. Because either construction is possible, we consider extrinsic evidence of the parties' intent.[24]

There is little pertinent extrinsic evidence of the parties' intent in the record. The only such evidence is Hausam's suggestion that the Holiday Park lot owners form a homeowners' association and purchase Lot 30 from him for their continued recreational use. His offer is some evidence that the original developers intended that Holiday Park lots would be available for multi-family recreational use, but it is not conclusive.

Because Holiday Park's covenant could be read as either limiting the use of the property to single family "residential or recreational" purposes or limiting permissible structures on the lot, the covenant is ambiguous. The only relevant extrinsic evidence indicates that Holiday Park's developers intended to allow multi-family recreational use of Lot 30 and we have held that "doubts [about the interpretation of restrictions] should be resolved in favor of the free use of land."[25] We therefore interpret the covenant to permit multi-family recreational use. Absent a nonconforming structure, use of Lot 30 for recreation by the members of the Airpark Owners Association does not violate the Holiday Park covenant.

## 2. The Airpark Owners Association's ownership and use of Lot 30 does not conflict with § 4.11 of the Restatement.

■ HP Limited argues that the Restatement (Third) of Property: Servitudes § 4.11 prohibits the Airpark Owners Association from allowing Roberts Subdivision lot owners to use Lot 30. The Restatement provides: "Unless the terms of the servitude . . . provide otherwise, an appurtenant easement . . . may not be used for the benefit of property other than the dominant estate."[26] The superior court rejected this argument, observing that because the Airpark Owners Association *owns* the servient estate, the Restatement (Third) of Property: Servitudes § 4.9 applies. The superior court applied § 4.9 and ruled that the Airpark Owners Association could use Lot 30 in any way that did not unreasonably interfere with Holiday Park owners' permissible use of the easement. The court also ruled that HP Limited's argument that the Airpark Owners Association's use of Lot 30 would interfere with HP Limited's use and enjoyment of the boat launch easement was based on speculation.

On appeal, HP Limited again argues that the superior court should have applied § 4.11

---

**24.** *Hurst,* 59 P.3d at 278. We note that other jurisdictions have interpreted "single family dwelling" as a purely structural restriction. *See, e.g., Double D Manor, Inc. v. Evergreen Meadows Homeowners' Ass'n,* 773 P.2d 1046, 1047–50 (Colo.1989) (interpreting covenant's "one single-family dwelling" provision as purely structural restriction). HP Limited cites to case law from outside of Alaska that restricts multiple owners' use of a single family dwelling after it has been constructed, but we find these cases inapplicable. *O'Connor v. Resort Custom Builders, Inc.,* 459 Mich. 335, 591 N.W.2d 216 (1999) considered a covenant restricting land use to "residential pur-

pose[s]" only, but lots in Holiday Park may be used for either "residential or recreational purposes." HP Limited also argues that *Dean v. Nugent Canal Yacht Club* applies, but the covenant in that case specifically restricted *use* of the property "solely and exclusively for single family residence purposes." 66 Ohio App.3d 471, 585 N.E.2d 554, 555 (1990).

**25.** *Hurst,* 59 P.3d at 278.

**26.** RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.11 (2000).

of the Restatement. In support of its position, HP Limited cites an illustration from the Restatement regarding § 4.11:

> Hotel Corporation, the owner of a five-acre parcel on which it operated a hotel, purchased a lot in Greenacres, the adjacent subdivision. An easement appurtenant to the Greenacres lot granted rights to use the Greenacres community beach and recreational facilities. In the absence of other facts or circumstances, Hotel Corporation is not entitled to use the Greenacres beach or recreational facilities for the benefit of its hotel operation.[27]

The Airpark Owners Association argues that Restatement § 4.11 does not apply to this case because its use of Lot 30 is as the owner of the servient estate, not as the owner of a dominant tenement benefitted by the easement.

■■■ We have explained that "the land subject to [an] easement is described as a 'servient tenement' and the land enjoying [an] easement [is] the 'dominant tenement.' ... [I]t is not necessary that the two tenements be contiguous or adjoining."[28] Here, because Lot 30 is the lot subject to the easement, it is the servient tenement. Holiday Park's plat notes make clear that the easement is "for the use of all property owners in the subdivision." All of the other lots in Holiday Park are dominant tenements.

"Unless the terms of the servitude ... provide otherwise, an ... easement may not be used for the benefit of property other than the dominant estate."[29] But the Airpark Owners Association is not seeking to use the *easement* for the benefit of property other than the dominant estate; it seeks to use the *servient estate itself* for the benefit of

its members. The superior court correctly ruled that Restatement § 4.9 applies to these facts, not § 4.11. Section 4.9 states: "[T]he holder of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude." Because the Airpark Owners Association owns Lot 30, it is entitled to use Lot 30 in any manner that does not unreasonably interfere with the Holiday Park lot owners' use of the boat launch easement.[30]

HP Limited did not introduce any evidence that the Airpark Owners Association's use of Lot 30 interferes with the boat launch easement. HP Limited argues that because members of the Airpark Owners Association "will have to use, cross or travel on the easement," "conflicts will develop." We agree with the superior court that these assertions are speculative and unsupported by the record. There is no evidence in the record that the Airpark Owners Association's use of Lot 30 unreasonably interferes with Holiday Park lot owners' use of the easement.[31]

### C. The Superior Court Did Not Err In Ruling That HP Limited Did Not Establish A Prescriptive Easement.

HP Limited argues that even if the original scope of the express easement was limited, it perfected an easement by prescription to use the designated path and surrounding areas on Lot 30 for general recreation. This argument is based on Holiday Park lot owners' use of the easement between 1976 and 2004.

■■■ There are three elements necessary to perfect a prescriptive easement: (1)

27. Restatement (Third) of Property: Servitudes § 4.11 illus. 1 (2000).

28. *Freightways Terminal Co. v. Indus. & Commercial Const., Inc.*, 381 P.2d 977, 982–83 (Alaska 1963) (internal citations omitted).

29. Restatement (Third) of Property: Servitudes § 4.11 (2000).

30. The cases HP Limited cites to in support of its argument do not apply here. As Kenai River Airpark points out, *Leffingwell Ranch v. Cieri*, 276 Mont. 421, 916 P.2d 751 (1996) concerned an *easement holder* seeking to expand the use of the easement; the easement holder did not own

the servient estate. *Christensen v. City of Pocatello* is similarly inapplicable. 142 Idaho 132, 124 P.3d 1008 (2005).

31. We note that our decision today does not affect HP Limited's ability to bring another claim in the future should the Airpark Owners Association's use of Lot 30 begin to unreasonably interfere with Holiday Park lot owners' use of the boat launch easement. We merely hold that there is no evidence in the record before us to support a finding that the Airpark Owners Association's current use reaches this level.

the use must have been continuous and uninterrupted for at least ten years; (2) the user must have acted as if he were the owner and not merely one acting with permission of the owner;[32] and (3) the use must have been reasonably visible to the record owner.[33] "The main purpose of these requirements is to put the record owner on notice of the existence of an adverse claimant."[34] The claimant must prove each element by clear and convincing evidence.[35]

 HP Limited's claim for a prescriptive easement relies largely on the testimony of other lot owners as to how they used the easement area over the years. But the lot owners in Holiday Park purchased their properties at different times and used Lot 30 with varying frequency. HP Limited is the only plaintiff in this action, and it is not seeking to establish a public prescriptive easement. Therefore, HP Limited cannot rely on the other lot owners' use of Lot 30 to establish a prescriptive easement for itself; it can only rely on its own use of the lot or, possibly, the use of its predecessor-in-interest, Todd.[36] We agree with the Idaho Supreme Court that:

> [W]here there is more than one claimant to a prescriptive easement, the trial court must make findings sufficient to support each claim. The easement alleged is best described as a shared, private right of way. Further, it is permissible for a trial court to make findings of fact common to all property owners asserting prescriptive rights in the same property. Nonetheless, where, as here, the claimants purchased

their property at different times and used the subject property for different purposes and with different frequency, the trial court must make specific findings to each Property Owner's claim. Such findings are necessary, in part, because prescriptive rights are defined by the actual prescriptive use of the property over the statutory period.[37]

HP Limited can only support its claim for a prescriptive easement with evidence of its own use of the easement, or the use of Todd, its predecessor in interest. Any other Holiday Park lot owner seeking to expand the bounds of the express easement by prescriptive use would have to bring his or her own claim and independently satisfy the requirements for a prescriptive easement.

## 1. Todd's use of Lot 30 was not hostile.

 The hostility requirement for a prescriptive easement requires that the "user must have acted as if he were claiming a permanent right to the easement."[38] The test is objective and seeks to determine "whether the possessor acted toward the land as if he owned it, without the permission of one with legal authority to give possession."[39] When one uses another's property, there is a presumption that he does so with "the rightful owner's permission and in subordination to his title."[40] "This presumption is overcome ... by a showing that such use of another's land ... was openly adverse to the owner's interest, i.e., by proof of a distinct and positive assertion of a right hostile

---

**32.** This is also referred to as the "hostility" requirement. *See McDonald v. Harris*, 978 P.2d 81, 83 (Alaska 1999).

**33.** This is also referred to as the "open and notorious" requirement. *See Swift v. Kniffen*, 706 P.2d 296, 302 (Alaska 1985).

**34.** *Id.*

**35.** *McDonald*, 978 P.2d at 83.

**36.** Kenai River Airpark argues that "Todd's uses are not applicable and [HP Limited] has to prove its own adverse use for 10 years since 1994 when [it] was formed." Like the superior court, we decline to reach the question of whether HP Limited could rely on Todd's use to establish an

easement by prescription because we conclude that the superior court did not err in finding that Todd's use did not satisfy the requirements of hostility and notoriety.

**37.** *Hodgins v. Sales*, 139 Idaho 225, 76 P.3d 969, 973 (2003).

**38.** *Swift*, 706 P.2d at 303 (citing *City of Anchorage v. Nesbett*, 530 P.2d 1324, 1331 (Alaska 1975)).

**39.** *McDonald*, 978 P.2d at 84 (quoting *Nome 2000 v. Fagerstrom*, 799 P.2d 304, 310 (Alaska 1990)).

**40.** *Swift*, 706 P.2d at 304.

to the owner of the property." [41] Evidence of a landowner's acquiescence is not enough to extinguish an adverse user's claim; the question is whether the landowner intended to permit the use or merely acquiesced in that use. [42]

Todd testified that he fished on the riverfront of Lot 30 in 1978, 1979, and 1980, but other Holiday Park lot owners testified that they never, or very rarely, saw Todd fishing off of the easement in later years. Todd testified that he also camped on the easement in 1976 and 1977, but he owned the lot during this time and was therefore not acting "adversely" by camping on it. Further, Todd testified that he knew when Hausam was on the lot and that, because he did not like confrontation, he avoided going to Lot 30 when Hausam was around.

The superior court found that, after 1978, Todd did not use Lot 30 as though he were its owner; he used it as if acting with the owner's permission. The court found that Todd's use of the easement included showing prospective buyers the easement, but ruled that this was a permissible use implied by the scope of the express easement. The superior court also found that Todd was "rarely present during the peak fishing season" and that "[t]his is not conduct synonymous with ownership." Todd's intentional avoidance of Hausam, the owner of the lot, demonstrates that he did not act "toward the land as if he owned it." [43] The superior court did not clearly err in finding that this purposeful avoidance, as well as Todd's allegedly rare use of the lot, were inconsistent with the conduct necessary to perfect an easement by prescription.

### 2. Todd's use of Lot 30 was not open and notorious.

A party making a claim for an easement by prescription also must prove that "a duly alert owner would have known of

the adverse presence." [44] In other words, the claimant must establish that his or her use was open and notorious. [45] The superior court found that Todd's use of Lot 30 was not notorious. The court explained that "by Todd's own testimony he avoided Hausam after they had their falling out in 1978 and he had not seen Hausam in 23 years; that is, until Hausam's deposition was taken in August 2008 in connection with this law suit." The court concluded: "Todd's conduct in avoiding Hausam [was] the antithesis of notoriety."

The superior court's determination is supported by the record. Todd testified that he did not see Hausam between 1976 and 2008. Todd also testified that he would fish late at night or early in the morning, and that he knew when Hausam was on Lot 30. Todd explained: "I don't attempt to contact people I'm having a little difficulty with.... I don't rile up issues at all." Many of the other lot owners confirmed that they very rarely saw Todd fishing on Lot 30. Todd's intentional avoidance of Hausam was inconsistent with an open and notorious use of the property sufficient to put a reasonably diligent landowner on notice. [46]

The superior court did not err in ruling that Todd's use of Lot 30 was neither hostile nor open and notorious. The record shows that Todd did not act "toward the land as if he owned it," [47] and that Hausam had little or no notice that Todd intermittently used the property. The superior court did not err in ruling that HP Limited failed to establish an easement by prescription.

### D. HP Limited Did Not Establish An Easement By Implication.

#### 1. HP Limited did not meet the requirements for establishing an easement by implication.

HP Limited also argues that it established an easement by implication, which expanded

---

41. *Id.*

42. *Id.* at 303–04.

43. *McDonald,* 978 P.2d at 84.

44. *Id.* at 85.

45. *Id.*

46. *See Nome 2000 v. Fagerstrom,* 799 P.2d 304, 309 n. 7 (Alaska 1990) ("The function of the notoriety requirement is to afford the true owner an opportunity for notice.").

47. *McDonald,* 978 P.2d at 84.

the permissible uses of the easement on Lot 30 to include all general recreational activities and broadened the geographic boundaries of the easement.

 An implied easement exists when there is a quasi-easement at the time of contract or sale or conveyance.[48] The quasi-easement must be apparent, reasonably necessary for the enjoyment of the land retained or the land conveyed, and continuous in nature.[49] The focus is on the use of the property at the time of severance.[50] Additionally, "[e]ven if these elements exist, an easement by implication will not be found where the parties intend that such an easement not exist."[51]

The superior court initially agreed that HP Limited had established an expansion of the easement across Lot 30 by implication. But the superior court reversed this determination after trial, granting Kenai River Airpark's motion to modify or amend the judgment. The post-trial order stated:

> [T]here must be unity of ownership at the time of severance in order to find an easement by implication, and ... no one had used the boat launch easement for access to the river at the time the lots were created. The evidence shows that the boat launch was built at a later date and ... no lots had been sold to third parties when Mr. Todd transferred Lot 30 to Neal Hausam."

The superior court's post-trial ruling denied HP Limited's claim for an easement by implication.

On appeal, HP Limited argues that all of the elements of an implied easement were

shown and that it is entitled to a ruling establishing a broader geographic scope for the easement and additional permissible uses. Kenai River Airpark responds that none of the elements was met and that, even if they had been, the parties did not intend that such an easement would exist.

### 1. Unity of ownership and quasi-easement requirements

 The first requirement for an easement by implication is a showing that a quasi-easement existed at the time of severance. We have defined the term "quasi-easement" in the following way: "While a person cannot have an easement over his own land, he may make use of one part of his land for the benefit of another part and thus create what has been denominated a quasi easement."[52] To establish an easement by implication, there must have been unity of ownership prior to the severance of the title to the land, and the previous owner must have used one part of the land for the benefit of another part.[53]

Prior to 1978, Hausam and Todd each held a one-half ownership interest in Lot 30. They also shared a one-half ownership interest in other unsold Holiday Park lots between 1975 and 1978. Thus, prior to 1978, there was unity of ownership between Lot 30 and other unsold lots in Holiday Park.[54] Because the other unsold lots were benefitted by the easement across Lot 30, Todd and Hausam created a quasi-easement to use the boat launch. Kenai River Airpark argues that the severance of ownership occurred in 1975, when the 160–acre parcel was parceled into 114 lots. But we do not consider the

**48.** *Williams v. Fagnani,* 175 P.3d 38, 40 (Alaska 2007).

**49.** *Id.*

**50.** *Id.*

**51.** *Demoski v. New,* 737 P.2d 780, 784 (Alaska 1987).

**52.** *Freightways Terminal Co. v. Indus. & Commercial Const., Inc.,* 381 P.2d 977, 983 (Alaska 1963).

**53.** *Id.* at 985.

**54.** The superior court found that "no lots had been sold to third parties when Mr. Todd transferred Lot 30 to Neal Hausam." As HP Limited points out, this statement is incorrect. 12 lots were sold between the 1975 platting and the 1978 conveyance to Hausam. But the fact that other lots in the subdivision were sold prior to 1978 is irrelevant to the unity of ownership and severance inquiry in this case. As long as Todd concurrently owned Lot 30 and *any other* Holiday Park lot, unity of ownership existed. Some lots were sold between 1975 and 1978, but Todd remained the joint owner of many other Holiday Park lots, in addition to Lot 30, until May 16, 1978. Severance occurred on May 16, 1978.

date of parceling to be the date of severance; instead, severance occurs when the lot burdened by the quasi-easement is sold or transferred.[55] In this case severance occurred on May 16, 1978, when Todd conveyed his interest in Lot 30 to Hausam.

### 2. Todd's use was not apparent.

 To establish an expanded easement by implication, HP Limited also must show that Todd's use of the easement—for purposes other than boat launching within the defined path—was apparent. HP Limited relies heavily on evidence of the use of the Lot 30 easement after the 1978 conveyance to prove this element. But only those activities that occurred before the date of severance are relevant to the establishment of an easement by implication,[56] i.e. only the uses made of the easement and surrounding areas between 1976 and 1978.

Todd testified that he and Hausam had a falling out in 1976 and that he did not see Hausam again until the deposition in 2008. Todd testified that he camped on the lot for 30 days in 1976 and 1977, but he also testified that he knew when Hausam was on the lot and tried to avoid confrontation after their disagreement. Purposefully avoiding one of the co-owners while using the property is antithetical to an "apparent" use;[57] such hidden use does not establish that the parties intended, or had a reasonable expectation of, an expansion of the easement by implication.[58]

Because Todd's use was not sufficiently apparent, we need not address whether Todd's use was reasonably necessary or whether the parties intended to create an easement by implication. The superior court did not err in ruling that Todd did not establish an easement by implication.

### E. HP Limited Did Not Prove Hoback Had Inquiry Notice Of The Alleged Scope Of The Easement.

 HP Limited also argues that it is entitled to an expanded scope of the easement on the basis of inquiry notice. Purchasers of land can be charged with notice of an interest adverse to their title when they are aware of facts "which would lead a reasonably prudent person to a course of investigation which, properly executed, would lead to knowledge of the servitude."[59] "The purchaser is considered apprised of those facts obvious from an inspection of the property."[60] Lack of diligence in the pursuit of a required inquiry creates a conclusive presumption that the purchaser knew of those facts which reasonable inquiry would have revealed.[61] Proper investigation generally includes a request for information from those reasonably believed to hold an adverse interest; purchasers may not rely solely on statements of vendors or anyone who has a motive to mislead.[62]

The superior court did not directly address HP Limited's easement by inquiry notice

---

55. *See, e.g., Freightways Terminal*, 381 P.2d at 985 (focusing on the use of one of the parceled lots, Tract D, before it was sold rather than before it was parceled).

56. *See Williams v. Fagnani*, 175 P.3d 38, 40 (Alaska 2007) ("An implied easement arises when there is (1) a quasi-easement at the time of contract of sale *or conveyance*, (2) which is apparent...." (emphasis added)).

57. *See Methonen v. Stone*, 941 P.2d 1248, 1253 (Alaska 1997) (citing *Hutcheson v. Sumrall*, 220 Miss. 834, 72 So.2d 225, 227 (1954) (use is apparent if discoverable upon inspection)).

58. RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.12 cmt. h (2000) ("Implication of a servitude ... is based on what the parties probably intended or had reasonable grounds to expect.").

59. *Methonen*, 941 P.2d at 1252. In *Methonen*, we established that inquiry notice is an independent theory for establishing an easement. *Id.* at 1251 ("... Stone and Talmage have raised genuine issues of material fact as to two separate potential grounds for establishing an easement ... inquiry notice and implied easement."). *Methonen* is the only case in which we have recognized that inquiry notice is an independent easement theory.

60. *Id.*

61. *Id.*

62. *Id.*

claim at trial.[63]

On appeal, HP Limited claims that Hoback, and by association Kenai River Airpark, relied exclusively on the statements of Randy Comer, the seller and realtor, that the easement across Lot 30 was rarely used, and that exclusive reliance on Comer's statements was unreasonable. But HP Limited ignores Hoback's testimony that he visited Lot 30 twice before purchasing it and that there were no visible signs of expanded use of the easement. These visits occurred in the spring—when there was no fishing—and Hoback found no evidence to suggest that the easement was being used for activities other than boat launching. Further, although Hoback spoke with Todd a few months before he bought Lot 30, Todd did not mention the recreational uses of Lot 30 until *after* Hoback bought the lot.

The record does not show that Hoback had any way of knowing, at the time of purchase, that Holiday Park lot owners fished on Lot 30. Hoback conducted sufficient investigation into potential interests adverse to his title, and he was not put on notice that the easement was used for anything other than boat launching. On the record before us, he cannot be charged with inquiry notice of the alleged expanded scope of the easement.

### F. The Superior Court Did Not Err In Ruling That HP Limited Did Not Prove An Easement By Estoppel.

■ HP Limited also argues that the scope of the easement across Lot 30 was expanded by estoppel. We follow the definition of an easement by estoppel explained in Tiffany's Real Property § 801:

> In case there is an attempted oral grant of an easement, and the intended grantee

makes improvements for the purpose of exercising the easement, equity will recognize and enforce the easement on the theory of what is ordinarily referred to as that of part performance but which is essentially the theory of estoppel.[64]

We have made clear that "a party 'may not rely upon the theory of creation of an easement by oral grant and estoppel, when there is no evidence to support a finding that an oral grant was made.' " [65]

The superior court denied HP Limited's easement by estoppel claim because HP Limited did not show: (1) an oral grant; or (2) that HP Limited, or its predecessor Todd, relied to its detriment on any type of oral representation, especially given that Todd was one of the original developers of Holiday Park. HP Limited responds that "Todd testified [about] his discussion as to the recreational river access with Hausam at the beginning of the development and the intended use of Lot 30."

We find no evidence in the record that an oral grant of an expanded easement was made. The evidence cited by HP Limited merely consists of the developers' discussions about the proposed scope for the express easement. Even Todd's testimony at trial did not clarify who had made the broader proposals Todd recalled. Further, Hausam could not have given Todd an oral grant of an easement before 1978 because Todd and Hausam jointly owned the unsold lots up until that time.[66] Todd testified that he did not see Hausam between 1976 and 2008. The superior court did not clearly err in finding that Todd did not prove there was an oral grant beyond the express easement contained in the plat.[67]

**63.** The superior found an easement "by intent" in its ruling at trial but this finding cannot be understood as a consideration of HP Limited's "inquiry notice" claim. In context, the superior court's use of an "intent" theory of easement creation referred to its consideration of extrinsic evidence outside the four corners of the plat. "Easement by intent" is not a separate theory for the creation or expansion of an easement in Alaska.

**64.** *Freightways Terminal Co. v. Indus. & Commercial Const., Inc.*, 381 P.2d 977, 984 (Alaska 1963).

**65.** *Swift v. Kniffen*, 706 P.2d 296, 302 (Alaska 1985) (quoting *Hawkins v. Alaska Freight Lines*, 410 P.2d 992, 993 (Alaska 1966)).

**66.** *See Freightways Terminal Co.*, 381 P.2d at 983 ("a person cannot have an easement over his own land ...").

**67.** HP Limited also argues that it established an easement to use "the Lot 30 hill for Kenai River related recreation" on the basis of estoppel, prescription, and implication. HP Limited claims that "John Todd both personally and with his

### G. The Superior Court Did Not Abuse Its Discretion By Ruling That Kenai River Airpark Was The Prevailing Party.

After the superior court entered its findings of fact and conclusions of law, it ruled that Kenai River Airpark was the prevailing party and awarded fees and costs to Kenai River Airpark. HP Limited appeals the superior court's prevailing party determination, arguing that "there was no prevailing party."

█ Under Alaska Civil Rule 82, "Except as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule." We have made clear that "[t]he prevailing party is the one who has successfully prosecuted or defended against the action, the one who is successful on the 'main issue' of the action and 'in whose favor the decision or verdict is rendered and the judgment entered.' " [68] We review a trial court's prevailing party determination for abuse of discretion, which we find only if the determination "is arbitrary, capricious, manifestly unreasonable, or improperly motivated." [69]

The superior court concluded that permissible uses of the easement included boat launching, bank fishing, and access to the river; it denied HP Limited's claims for an expanded easement by prescription, implication, and estoppel. The superior court also ruled that the Airpark Owners Association could allow its members to use Lot 30, despite HP Limited's assertions to the contrary. These findings alone are sufficient for us to conclude that the court did not abuse its discretion in making its prevailing party determination. Further, pursuant to our decision on appeal, the only permissible use of the easement is boat launching. Kenai River Airpark is definitively the prevailing party.

### V. CONCLUSION

We REVERSE the superior court's determination as to the permissible use of the easement and hold that it is limited solely to boat launching. We AFFIRM the superior court's conclusion that the easement is limited to the path defined on the plat and that HP Limited has not established an expanded easement by prescription, implication, inquiry notice, or estoppel. We AFFIRM the superior court's decision that Kenai River Airpark Owners Association may allow its members to use Lot 30 so long as their use does not unreasonably interfere with the Holiday Park lot owners' right to use the easement across the lot. We also AFFIRM the superior court's prevailing party determination and attorney's fee award.

buyers demonstrated uses of the hill...." But as we have explained, "a party 'may not rely upon the theory of creation of an easement by oral grant and estoppel, when there is no evidence to support a finding that an oral grant was made.' " *Swift*, 706 P.2d at 302. HP Limited cites no authorities contradicting this rule, nor does it point to any express evidence of an oral grant. HP Limited's arguments that it established an easement by prescription and implication are likewise unsupported: there has been no show-ing that Todd's activities on the hill were open and notorious or hostile, or that Todd's activities on the hill were apparent.

68. *Taylor v. Moutrie–Pelham*, 246 P.3d 927, 929 (Alaska 2011) (quoting *Progressive Corp. v. Peter ex rel. Peter*, 195 P.3d 1083, 1092 (Alaska 2008)).

69. *Id.* at 928–29 (internal citations omitted).