NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ARTHUR BEHM, ) | |
| ) | Supreme Court No. S-18872 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-20-08321 CI |
| v. ) | |
| ) | MEMORANDUM OPINION |
| JOHN KETCHUM and the ) | AND JUDGMENT* |
| MATANUSKA-SUSITNA BOROUGH, ) | |
| ) | No. 2094 – June 4, 2025 |
| Appellees. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Josie Garton, Judge.

Appearances: Robert K. Reges and Colleen J. Moore, Reeves Amodio LLC, Anchorage, for Appellant. Matthew Singer and Lee C. Baxter, Schwabe, Williamson & Wyatt, P.C., Anchorage, for Appellee Ketchum. Notice of nonparticipation filed by Denise Michalske, Assistant Borough Attorney, and Nicholas Spiropoulos, Borough Attorney, Palmer, for Appellee Matanuska-Susitna Borough.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

---

\*      Entered under Alaska Appellate Rule 214.

## I. INTRODUCTION

Two neighboring property owners dispute whether a right of way designated on a subdivision plat is private or public. One neighbor, who owns land within the subdivision, maintains that the right of way over his land was intended to be private, and thus provides access only to certain lots within the subdivision. The other neighbor, who owns land outside the subdivision, argues that the right of way was dedicated to the public, and thus provides him access to his land.

The superior court concluded that the plat is ambiguous as to whether the right of way was intended to be private or public. Then, relying on extrinsic evidence and legal rules of construction, the court decided that the right of way was public and awarded attorney's fees to the neighbor who owned land outside the subdivision as the prevailing party. Because we hold that the plat unambiguously designates the right of way as private, we reverse the judgment and vacate the award of attorney's fees.

## II. FACTS AND PROCEEDINGS

This case concerns two parcels of land in the Matanuska-Susitna Borough: One parcel is owned by Arthur Behm, and the second parcel is owned by John Ketchum. A subdivision was recorded on Plat 67-9, a portion of which is included immediately below.[1] The eastern boundary of the subdivision is indicated by a bold, solid line. Behm's land, designated on the plat as lot 13, is located within the Rainbow Shores subdivision; Ketchum's land, designated as lots 10 and 13, is located outside of the subdivision but adjacent to Behm's land.

---

[1] We modified the portion of the plat slightly to add a compass rose and indicator arrows for Behm's and Ketchum's land.



The plat shows a 20-foot right of way running along the northern boundary of Behm's land that ends at the northeast corner where it meets the southern tip of Ketchum's land. To the north of the right of way are subdivision lots 9-12. The plat includes a certificate of ownership and dedication, stating that the owners of the subdivision "dedicate all street[s], alleys, walks, parks and other open spaces to public or private use as shown on this plat." A note on the plat legend provides, "Lot 17 of Block 2, Rainbow Shores No. 2 subdivision, and all roads dedicated for public use."

Ketchum began using the right of way across Behm's land in 2016 when he purchased his property. At that time there was a narrow strip of land that bridged the two properties and was wide enough to allow only for pedestrian access. A few years later, pursuant to a permit from the Borough, Ketchum took steps to widen this strip of land to allow for vehicular access.

Behm objected to Ketchum's use of the right of way, and in 2020 he filed suit against Ketchum in superior court for declaratory relief and trespass, later amending the complaint to add a quiet title claim. Ketchum counterclaimed for quiet title in his favor.[2]

The superior court first examined the plat and found that it "is ambiguous as to the private or public character of the right-of-way." The court then reviewed what it described as "scant" extrinsic evidence and decided that it weighed in favor of a public right of way, "but by so slim a margin that the plat remains ambiguous." After considering the rules of construction, the court concluded that the right of way is public, ruled in Ketchum's favor, and awarded him attorney's fees.

Behm appeals.

## III. DISCUSSION

Resolution of this case turns on whether the right of way is public or private. If the right of way was intended to be private, then Ketchum does not have a right to use it because his land is outside the subdivision. But if the right of way was intended for public use, then Ketchum may use it to access his land.

Behm maintains that the plat unambiguously shows that the right of way is private. He also argues that even if the plat were ambiguous, there is no relevant extrinsic evidence from which the court could infer the intent of the drafters in 1967, and the rules of construction support a finding that the right of way is private. Ketchum asks us to adopt the superior court's reasoning and uphold its rulings.

"Whether a deed is ambiguous is a question of law,"[3] which we review de novo. When interpreting a plat we must, whenever possible, give effect to the intent of

---

[2]     Ketchum also asserted claims for implied and prescriptive easements in the superior court, but we do not address these claims because they are not raised on appeal.

[3]     *HP Ltd. P'ship v. Kenai River Airpark, LLC*, 270 P.3d 719, 727 (Alaska 2012).

the drafters.[4]  We use a three-step test when doing so.[5]  First, we examine "the four corners of the document to see if it unambiguously presents the parties' intent."[6]  This threshold inquiry is limited to the four corners of the plat because "potential land purchasers must be able to rely on the plain and clear language of deeds or plats without being concerned that an otherwise plain meaning might be modified by the circumstances surrounding the drafting of the instrument."[7]  Only if the plat is ambiguous will the court "consider extrinsic evidence of the surrounding facts and circumstances."[8]  Finally, "if the parties' intent is still unclear," the court will consider rules of construction.[9]

We hold that the plat unambiguously designates the right of way as private, disallowing Ketchum's use.  And because the plat is not ambiguous, we will not consider extrinsic evidence or rules of construction to determine the nature of the right of way.  Ketchum's other arguments fail because they are based on the mistaken premise that the plat is ambiguous.

### A.      The Plat Unambiguously Designates The Right Of Way As Private.

Our analysis begins with the express language and features of the plat. The certificate of ownership and dedication sets a general principle:  "All street[s], alleys, walks, parks and other open spaces" are dedicated "to public or private use as shown on [the] plat."  Consistent with that principle, a note on the plat legend

---

[4]      *Id.*; *Est. of Smith v. Spinelli*, 216 P.3d 524, 529 (Alaska 2009).

[5]      *HP Ltd. P'ship*, 270 P.3d at 727.

[6]      *Wayson v. Stevenson*, 514 P.3d 1263, 1272 (Alaska 2022) (quoting *Sykes v. Lawless*, 474 P.3d 636, 644 (Alaska 2020)).

[7]      *HP Ltd. P'ship*, 270 P.3d at 728.

[8]      *Wayson*, 514 P.3d at 1272 (alteration omitted) (quoting *Sykes*, 474 P.3d at 644).

[9]      *Id.* (alteration omitted) (quoting *Offshore Sys.-Kenai v. State, Dep't of Transp. & Pub. Facilities*, 282 P.3d 348, 354 (Alaska 2012)).

specifically dedicates lot 17 and "all roads" for public use. In contrast, neither the right of way nor any other feature on the plat is specifically designated as public or private either by the legend or individual label. But the fact that the right of way is not labeled "private" does not create ambiguity as to its character. None of the lots of the subdivision are labeled private, and it would be unreasonable to suppose the drafters intended for all lots within the subdivision to be designated for public use simply because they were not individually labeled as private.[10] Thus, we conclude that the plat expressly designates public spaces, and anything not designated as public remains private, including the right of way across Behm's land.[11] It was error to conclude otherwise.

The superior court reasoned that the plat is ambiguous because it does not identify a dominant estate. Ketchum also presses this point, arguing that the plat "is ambiguous as to the dominant tenements that enjoy access via the right-of-way." But the court and Ketchum are mistaken that the plat is, in any relevant respect, ambiguous. Ketchum does not claim that his land is a dominant estate that entitles him to use a *private* right of way. Rather, he claims that he is entitled to use the right of way because it is *public*. And, as we have explained immediately above, the plat unambiguously designates the right of way as private, not public. Thus, any ambiguity in the plat as to the dominant tenements that enjoy access via the private right of way is not relevant to resolving Ketchum's claim.

---

[10]   We reach this conclusion by limiting our examination to the four corners of the plat and without applying rules of construction.

[11]   The same is true of the utility easement running along the southern border of subdivision block 2; it is not presumed public merely because the plat does not expressly label it as private. *See Chugach Elec. Ass'n v. Calais Co.*, 410 P.2d 508, 510 (Alaska 1966) ("[B]y their nature [utility easements] are not subject to general or common use by the public at large, but only by a limited number of persons or corporations who are engaged in the business of providing public utility services for the residents of the . . . [s]ubdivision.").

Ketchum also suggests that the right of way "could serve as intra-Subdivision access to Subdivision Lots 9-12, could provide access to Subdivision lots and Rainbow Lake, could provide access to Subdivision lots, Rainbow Lake, and the Ketchum parcel, or a varying combination of all of these." But the fact that the right of way might provide intra-subdivision access to other lots or the lake does not create ambiguity as to whether the right of way was intended to provide public access. We have already decided that the plat expressly designated public spaces, and that anything not designated as public remained private. For example, the plat expressly provides public access to the lake in lot 17; the right of way was not designated as public, so it remained private.

Next, the superior court determined that the plat is ambiguous because the right of way "extends far beyond what would be necessary to provide access to Block 2, Lot 12, extending all the way to the boundary of the subdivision." But even assuming the right of way extends beyond what is strictly necessary for access to lot 12, this does not create ambiguity as to whether the right of way is private or public. Although it is not entirely clear whether the narrow strip of land that now connects Behm's and Ketchum's land was in existence when the subdivision was created, the plat certainly does not depict such a connection. The plat shows that the northeast edge of the right of way is connected to Ketchum's land by only a single point, whereas the right of way provides a 20-foot-wide strip of access to the adjacent subdivision lots. This further indicates that the drafters lacked the intent to provide access to Ketchum's land via the right of way.

The superior court also pointed to a 15-foot utility easement, which runs parallel to the right of way through subdivision lots 9-12, as suggesting that the right of way was intended to benefit the public. The court noted that this easement, like the right of way, ends at the eastern boundary of the subdivision and "indisputably provides access to [Ketchum's land]." But a utility easement is distinct from a general right of

way, and absent an express dedication for public use, utility easements are private.[12] The utility easement was established for a separate purpose, namely, to provide access for utility companies, and its existence does not create ambiguity as to the nature of the right of way.

Finally, Ketchum suggests that the plat is ambiguous because the right of way "is a road in the common meaning of that word, [and therefore] is a 'road' within the meaning of Plat 67-9." But this argument is not compelling because the drafters used different words to indicate different things on the plat. The roads are uniformly 60 feet in width and are clearly labeled as "road." By comparison the right of way is 20 feet in width and is clearly labeled as "right-of-way." Had the drafters intended them to be the same, they would have used the same language. Thus, confining our analysis to the plain language and features of the plat, we observe a clear distinction between roads, which are designated for public use, and the right of way, which is designated for private use.

**B. Ketchum's Other Arguments Fail Because They Are Based On The Mistaken Premise That The Plat Is Ambiguous.**

Ketchum raises other arguments on appeal, relying on extrinsic evidence and rules of construction. Because we have held that the right of way is unambiguously private, we do not look outside the four corners of the plat, and therefore, the remainder of Ketchum's arguments fail.

Ketchum points out that his land overlaps with the right of way and that "the plat does not accurately depict features outside the subdivision," and he provides a detailed description of the other extrinsic evidence that supported the superior court's

---

[12] *See id.* (concluding that utility easements were not dedicated for public use because members of public "are not using [utility] easements in the manner that they would use the streets, alleys, parks, walks and thoroughfares in the subdivision, but are only deriving benefits from the use of such easements by particular persons or corporations providing utility services").

ruling. He also argues that the rules of construction favor a finding that the plat was intended to provide access to his land.[13] As noted above, we will not consider extrinsic evidence and rules of construction when interpreting a plat unless the plat is ambiguous.[14] Here, the plat is not ambiguous, so we are not required to take the analysis any further.

## IV. CONCLUSION

The judgment of the superior court is REVERSED and the attorney's fee award is VACATED.

---

[13] Ketchum also argues that Behm waived an argument under AS 40.15.030, but given our ruling that the plat is not ambiguous, we do not need to resolve this dispute.

[14] *Wayson*, 514 P.3d at 1272.