*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALEX KOPONEN, | ) | |
| | ) | Supreme Court No. S-19135 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-23-01376 CI |
| v. | ) | |
| | ) | O P I N I O N |
| VSEVOLOD D. ROMANOV and | ) | |
| MARIA C. SANDERS, | ) | No. 7799 – December 19, 2025 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Kirk Schwalm, Judge.

Appearances: Alex Koponen, Fairbanks, Appellant. John Foster Wallace and Bobbie L. Allen, Zimmerman & Wallace, Fairbanks, for Appellees.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

CARNEY, Chief Justice.

## I. INTRODUCTION

A man claimed he had an easement for a driveway across his neighbor's land. He asserted that a previous owner of the neighboring property had given him oral permission to use the driveway and that he would not have built his house where he did without an easement to use his neighbor's property for access. The current neighboring property owners denied there was any easement.

The superior court found that the man had not presented evidence to support an oral grant to use the driveway and that the driveway was not visible to a reasonably diligent owner of the neighboring property. The man appeals, arguing that he has an easement by estoppel and, alternatively, that he has a prescriptive easement.

The superior court did not clearly err by finding that the man did not prove the existence of an easement by estoppel or a prescriptive easement. We therefore affirm its decision.

## II. FACTS AND PROCEEDINGS

In the 1970s Lewis and Gail Frank bought Lot 17 of the Chena Hills subdivision in Fairbanks and built a driveway along the property line with the neighboring Koponen homestead. In 1979 Alex Koponen's parents gave him permission to build a house on their homestead. He extended the driveway on the Franks' property to his family's homestead, built a house, and installed a fuel tank. Koponen usually reached his house by foot on another part of the property, but he occasionally used the driveway to drive into town and for fuel deliveries.

In 1982 the Franks sold their house to Carol Gold. Koponen continued to use Lot 17's driveway until Gold told him that he did not have a right to cross her property. He arranged for an easement "further up the hill" on Lot 16 and reduced his use of the driveway "to maintain friendly relations with" Gold. Koponen continued to use the driveway for fuel deliveries once every two or three years.

In August 2020 Vsevolod Romanov and Maria Sanders purchased Lot 17. In 2021 and 2022 Romanov and Sanders had work done on their driveway. Romanov met Koponen in 2021 when he saw Koponen attempting to move a tire that was on Lot 17. They discussed, but never reached, a possible lease agreement for Koponen to use the driveway. In 2022 Romanov placed a railroad tie with a boulder on top of it to block access between his property and Koponen's.

In March 2023 Koponen filed a complaint claiming that he had a driveway easement over Lot 17.[1] He stated that a driveway easement over Romanov and Sanders' property has provided "long standing access to [his] house and . . . fuel tank" and asked the court to restore his access. Koponen asserted that the driveway easement was the only route to his house that could accommodate fuel deliveries or transporting heavy items.

Romanov and Sanders answered and moved to dismiss the complaint. They said that Koponen has no right to use their property for any purpose, and that Carol Gold had confirmed this to Koponen in 1984. They opposed Koponen's argument for an easement by necessity, asserting that he has alternate access points to his property including the Lot 16 easement and access to Chena Ridge Road and Katya Court.

Koponen moved for summary judgment, arguing that he had both an easement by estoppel and a prescriptive easement and that there was no genuine issue as to any material fact.[2] He did not support his motion with an affidavit.[3] Romanov and Sanders opposed. They first argued that any oral grant to Koponen would not have had legal effect because Koponen's father, not Koponen, was the legal property owner when the Franks allegedly gave Koponen permission to use their driveway. They argued that any agreement allowing Koponen to use Lot 17 was merely a "gentlemen's agreement" or "friendly neighborly permission" and did not create an easement by estoppel. They also argued that Koponen's use did not meet the requirements of a prescriptive easement.

The court denied both Koponen's motion for summary judgment and Romanov and Sanders' motion to dismiss. It determined that Koponen failed to show

---

[1]    Koponen is an attorney and represented himself.

[2]    *See* Alaska R. Civ. P. 56(c).

[3]    *See* Alaska R. Civ. P. 56(c), (e).

there was no genuine dispute of material fact whether an easement by estoppel or a prescriptive easement existed. It also observed that he did not support his motion for summary judgment with an affidavit, which "standing alone is reason to deny his motion for summary judgment." It also ruled that Koponen failed to show there was no genuine dispute of material fact as to a prescriptive easement. The court concluded that Koponen failed to show that he had met each of three criteria needed to demonstrate a prescriptive easement — continuity of use, hostility, and open and notorious use. It therefore held that "[t]here [were] genuine issues of material facts as to whether [he] met all three elements."

The case proceeded to trial; Koponen, Romanov, and Sanders each testified. Romanov and Sanders also called Carol Gold and Gwendolyn Bryson as witnesses.

Koponen testified that Lewis Frank orally gave him permission to use the driveway in 1979 and that he finished and began living in his home that same year. He said that he has lived continuously in his home except for while he attended law school, and that he has used the driveway since he moved in for fuel deliveries, commuting, and transporting heavy items. Koponen testified he continued to use the driveway after Carol Gold bought the property but that he rarely saw her when he drove past her house. After Gold told him he did not have permission to use her driveway, Koponen testified that he found an alternate route out of "kindness" and in consideration of her wishes. He testified that "[t]heoretically" he could have access to his property that did not require crossing Lot 17 and that he arranged an easement with his neighbor on Lot 16 to reduce his use of Gold's property. He also testified that he does not "interfere with [his neighbors'] use of Lot 17."

Romanov testified that he and Sanders bought Lot 17 around August 2020. He testified that before he bought it, he went there to "check [it] out" and saw no indications of "any kind of driveway access . . . that led to somebody else's place of dwelling." He testified that he had never seen a vehicle use that part of his property.

Romanov testified that he had placed an old tire near the property line between Lot 17 and Koponen's property in 2021, but that its specific placement was random. He also testified that he remembered meeting Koponen around the same time, when Koponen was trying to move the tire. Romanov stated that he and Koponen discussed, but did not reach, a potential agreement giving Koponen access across Lot 17. Finally, Romanov testified that in 2022 he put a boulder on top of a railroad tie to block the access point between the properties.

Sanders testified after Romanov. She testified that she never saw Koponen or anyone else drive across Lot 17. She also stated that she never saw anything that resembled a driveway to another property.

Carol Gold testified that she purchased Lot 17 in 1982. She stated that when she moved in, there was no indication of a driveway easement going through her land to Koponen's property and that she never received notice of such an easement. Gold testified she never saw Koponen drive on her property, but she did see two people in a vehicle who said they were looking for Koponen on her property in the summer of 1984. After that encounter, she said she called Koponen to tell him that he did not have a right to use her property for any purpose, including fuel deliveries. She testified that Koponen did not indicate to her that he believed he had an absolute right to use the driveway.

Gold also testified that she never saw anyone else use the driveway to cross her property after she spoke to Koponen in 1984. She testified that except for sabbaticals and academic year breaks spent away from her home, she lived at her house until she retired. Whenever she was gone, she said that she either would have someone staying at or renting her place, or that she would arrange to have a friend check on the property. Gold testified that in 2009 she rented it to Gwendolyn Bryson. She also said that it did not appear there was driveway access to Koponen's property, and that there was only something that looked like a possible footpath. Gold testified that after she told Koponen in 2019 that she was selling her property, he told her that he had been

using the driveway without her knowledge. She responded that he never had the right to use it, and she insisted he stop using it. She said that she also wrote him a letter reiterating her objection.

Bryson testified that she rented Gold's house from November 2009 to February 2019. She stated that in 2014 she installed a motion-sensitive security camera to continuously monitor the property and driveway. She testified that the camera would alert her with text and email notifications of activity on the property and that it would photograph anyone using the driveway. She stated that the camera never alerted her to a vehicle that she was not able to identify on the property. Bryson acknowledged that it was possible that the camera could have missed activity due to an interruption such as a power outage.

The court issued its decision denying Koponen's claims. It held that Koponen's testimony about Lewis Frank orally granting him an easement was inadmissible hearsay and found that Koponen did not prove an easement by estoppel. The court also found that Koponen did not prove a prescriptive easement. Though it found that Koponen had proven two of the three necessary elements — continuity and hostility — by clear and convincing evidence, it found that he did not prove notoriety. The court considered trial testimony, Koponen's fuel receipts, and admitted photographs of the property. It noted that even though Koponen had used the driveway for fuel deliveries, they occurred during business hours. It recounted that Gold testified that after 1984 she never saw anyone crossing her property or any physical indications of a driveway on it. And it noted Bryson's testimony that she never saw unknown vehicle activity herself or through her camera. The court referred to the photographs in evidence and found that "any possible extended driveway [through Lot 17] is very camouflaged by tree coverage." Thus, the court concluded, a "reasonably diligent owner would not have known about this extended driveway." Koponen appeals.

## III.  STANDARD OF REVIEW

"A superior court's determination of whether an easement . . . exists is based on findings of fact and legal conclusions.  We do not disturb a trial court's findings of fact unless they are clearly erroneous.  We review the application of law to facts de novo."[4]

## IV.  DISCUSSION

Koponen appeals the superior court's decision, arguing that it erred in determining he had not proven an easement by estoppel or a prescriptive easement.[5]  He asserts that there is an easement by estoppel based on a 1979 oral agreement with Lewis Frank, which he argues is sufficiently evidenced by the way his own house and driveway are positioned on his property.  He argues in the alternative that he has a prescriptive easement.

### A.  The Superior Court Did Not Clearly Err By Finding There Is No Driveway Easement.

Koponen argues that he had a driveway easement by estoppel because he established that he had an oral grant which he detrimentally relied on when he built his house.  And he argues he had a prescriptive easement due to his continuous use of the property, using it as if he were the owner, and because the driveway was reasonably visible.  We conclude that there was insufficient evidence of an oral grant of permission for him to use the driveway, and therefore he did not have an easement by estoppel.  Furthermore, we conclude there was no prescriptive easement because the notoriety element that the driveway be reasonably visible was not met.  We address each theory of easement in turn.

---

[4]  *Anderson v. Wilson*, 555 P.3d 13, 20 (Alaska 2024) (internal quotation marks omitted) (alteration in original) (quoting *HP Ltd. P'ship v. Kenai River Airpark, LLC*, 270 P.3d 719, 726 (Alaska 2012)).

[5]  He also argues that because the court's decision should be reversed, the award of attorney's fees should be reversed.

### 1. Koponen does not have an easement by estoppel.

To prove an easement by estoppel, a party must show that there was an oral grant or permission to use the land and that the party detrimentally relied on that permission.[6]

Koponen contends that the presence of his house and driveway is sufficient evidence of how the easement was to be used, proving that there was an oral grant from Lewis Frank to create an easement by estoppel across Lot 17. Koponen cites Alaska case law on the general acceptance and creation of easements by estoppel to grantees who receive an oral grant, as he claims he did from the Franks.[7] He argues that if he did not have an agreement, he would have built his home and driveway "elsewhere and [they] would not be situated where access across Lot 17 was required." And he asserts that the building of his home and driveway constituted sufficient detrimental reliance on an oral grant for an easement.

But we held in *Curran v. Mount* that proof of adverse possession must meet the clear and convincing evidence standard, rather than a preponderance of the evidence.[8] The superior court acknowledged Koponen's testimony describing his reliance on an oral agreement between him and Frank. But it found he did not meet his burden to prove, even by a preponderance of evidence, the existence of an oral grant to use the driveway.[9] The court reiterated that Koponen's testimony about an oral agreement between him and Frank was inadmissible hearsay that had been admitted for

---

[6] *Swift v. Kniffen*, 706 P.2d 296, 301 (Alaska 1985) ("Under Alaska law, a private easement is created by estoppel only upon a showing of an oral grant and detrimental reliance.").

[7] *See id.* at 301; *Freightways Terminal Co. v. Indus. & Com. Constr., Inc.*, 381 P.2d 977, 984 (Alaska 1963); *Mitchell v. Land*, 355 P.2d 682, 686 (Alaska 1960).

[8] 657 P.2d 389, 391-92, 391 n.6 (Alaska 1982).

[9] We note that the superior court applied the lesser preponderance of the evidence standard of proof and found no admissible evidence in support of an oral grant.

a limited purpose — "not for the truth of the mat[t]er asserted." And it concluded that Koponen had not presented "any admissible evidence that Lewis Frank orally granted him permission to use the Lot 17 driveway."

We agree that Koponen did not meet his burden to prove an oral grant from Lewis Frank, even though we disagree with the court's characterization of Koponen's testimony as inadmissible hearsay. The hearsay rule does not apply to "verbal acts . . . in which the statement itself affects the legal rights of the parties."[10] Koponen's testimony regarding an oral grant was significant "solely in the fact that it was made"; therefore, it was not hearsay and was admissible.[11] But we assign limited value to Koponen's self-serving testimony that was not corroborated with nor supported by additional evidence.[12] While the placement of his home may have reasonably been influenced by an agreement as Koponen suggests, it does not on its own satisfy his burden to prove the existence of an oral grant by clear and convincing evidence.[13] Koponen failed to meet his burden of proof and the court did not clearly err by finding he did not have an easement by estoppel.

### 2. Koponen does not have a prescriptive easement.

Koponen argues that if he does not have an easement by estoppel, he has a prescriptive easement. A party claiming to have a prescriptive easement must show

---

[10] Alaska R. Evid. 801(c) cmt. (internal quotation marks omitted).

[11] *Glover v. Glover*, 92 P.3d 387, 396 (Alaska 2004) ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.") (quoting Alaska R. Evid. 801(c) cmt.).

[12] *See Peterson v. Wirum*, 625 P.2d 866, 870 (Alaska 1981) (observing parties' reasonable expectations when entering into contracts are not established by their subjective intent expressed during litigation, because "such self-serving statements are not considered to be probative").

[13] *See Curran*, 657 P.2d at 391-92, 391 n.6.

that (1) the use was "continuous and uninterrupted for at least ten years";[14] (2) the claimant "acted as if he were the owner and not merely one acting with permission of the owner";[15] and (3) the use was "reasonably visible to the record owner."[16] Koponen thus must prove that he had a prescriptive easement by clear and convincing evidence.[17] But he did not. He was required to prove each of the above three criteria — continuous, hostile, and open and notorious use — in order to establish that he had a prescriptive easement across Romanov and Sanders' property. The superior court found that he met two of them: although fuel delivery was infrequent, the court found that it was continuous and hostile. But it found that he had failed to prove that his use of the proposed easement was "reasonably visible to the record owner."

To prove that his use was reasonably visible — that is, open and notorious — Koponen did not need to "demonstrate that the record owner had actual knowledge of [his] presence. The adverse user must show only that a duly alert owner would have known of the adverse presence."[18] The superior court, relying on photographs admitted to evidence, observed that "any possible extended driveway is very camouflaged by tree coverage." The court found that a "reasonably diligent owner would not have known about this extended driveway" and therefore Koponen's use of the driveway was not notorious.

The court did not clearly err. Koponen testified that he did not regularly maintain the extended driveway and did not "interfere with [his neighbors'] use of Lot

---

[14] *HP Ltd. P'ship v. Kenai River Airpark, LLC*, 270 P.3d 719, 732 (Alaska 2012).

[15] *Id.*

[16] *Id.* "This is also referred to as the 'open and notorious' requirement." *Id.* at 732 n.33.

[17] *See id.* at 732.

[18] *McDonald v. Harris*, 978 P.2d 81, 85 (Alaska 1999) (footnote omitted).

17." Romanov testified that he observed Koponen trying to move a tire on Romanov and Sanders' property and that shortly afterward Romanov and Koponen discussed a lease but did not reach an agreement. Romanov testified he then blocked access between his and Koponen's property with a railroad tie and boulder. Romanov and Sanders both testified there was nothing that appeared to be a driveway on their property where Koponen claimed an easement and they had never seen anyone using the claimed easement from their property to Koponen's. Gold also testified she never saw anything that looked like a driveway easement, and that after she confronted Koponen about visitors on her property in 1984, she did not observe any unknown vehicles in her driveway. Fuel deliveries were infrequent and mostly during daytime business hours when she likely would have been at work,[19] and Gold said that she never received notice of any easement. Before she sold the property in 2019 Gold talked with Koponen on the phone, and he said he was still using her driveway for fuel deliveries. Gold then wrote him a letter reiterating that he had no right to use it. And Gold's tenant, Bryson, testified her security camera never captured any unknown vehicles on the property.

The photographs and four witnesses' testimony (Gold, Bryson, Romanov, Sanders) support the conclusion that a duly alert owner would not have been aware of a driveway between Koponen's property and Lot 17. None of the photographs in the record seem to indicate a driveway running through Romanov and Sanders' property from Koponen's. Nor did Koponen take any steps to designate his easement.[20] And Romanov and Sanders testified that they only became aware of Koponen's claim to the

---

[19] Gold testified that she did not have daily business hours and her working days fluctuated, but that she would work various days Monday through Friday.

[20] *Cf. McDonald*, 978 P.2d at 82-86 (holding prescriptive easement existed where adverse user "erected a barbed wire fence on the side of the driveway," put up "no trespassing" and "private drive" signs, and placed obstacles blocking others' use of driveway).

driveway when Romanov observed him attempting to move a tire that apparently blocked it.

Even though Koponen met the continuous use and hostility elements for a prescriptive easement, he failed to show that his use of the easement was open and notorious. His claim for a prescriptive easement therefore fails.[21] The superior court did not err by finding that Koponen did not have a prescriptive easement.[22]

## V.    CONCLUSION

We AFFIRM the superior court's final judgment.

---

[21]    *See HP Ltd. P'ship*, 270 P.3d at 731-32 (naming three elements required to establish prescriptive easement). The court also rejected Koponen's arguments for an "apparent" easement and an easement by necessity. But Koponen did not raise these arguments on appeal. Therefore, we do not address them. *See Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 598-99 (Alaska 2012).

[22]    Koponen also asked us to vacate the attorney's fee award to Romanov and Sanders as the prevailing party if we reversed the superior court's decision. But we did not and therefore do not address the award.